IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-122 |
| | ) | (Formerly CR 114-025) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Michael Anthony Brown filed a motion under 28 U.S.C. § 2255 to vacate,

set aside, or correct his sentence.  Petitioner also filed a motion to amend his § 2255 motion.

The Court **REPORTS** and **RECOMMENDS** the motion to amend be **DENIED**, (doc. no.

17), the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be

**CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

A.      **Pretrial Proceedings**

On March 5, 2014, the grand jury in the Southern District of Georgia charged

Petitioner with one count of possession with intent to distribute heroin, one count of

possession of a firearm in furtherance of a drug trafficking crime, and one count of

possession of a firearm and ammunition by a convicted felon.  United States v. Brown, CR

114-025, doc. no. 1 (S.D. Ga. Mar. 5, 2014) (hereinafter "CR 114-025").  Petitioner faced a

maximum of twenty years' imprisonment for the heroin charge in Count One, five years to

life imprisonment on the firearm charge in Count Two, and not more than ten years' imprisonment on the firearm charge in Count Three. CR 114-025, doc. no. 2. At the time of his indictment, Petitioner was on supervised release in another drug-related case, which resulted in a motion to revoke his supervised release in that case. United States v. Brown, CR 103-021, doc. no. 36 (S.D. Ga. Sept. 13, 2013) (hereinafter "CR 103-021"). The Court appointed attorney Andrew Holliday to represent Petitioner in both cases. CR 114-025, doc. no. 21; CR 103-021, doc. no. 42.

Defendant moved to suppress the gun and heroin officers found inside his vehicle, arguing a tip by a confidential informant did not provide reasonable suspicion of criminal activity to justify the investigatory stop for a K-9 sniff of the vehicle. CR 114-025, doc. nos. 22, 31. At the suppression hearing on May 7, 2014, Sgt. William Leisey from the Richmond County Sheriff's Office (RCSO) testified he received the tip by telephone on September 4, 2013. The informant stated Petitioner was the owner and manager of Eros Bistro on Broad Street in Augusta, Georgia, Petitioner sold heroin at the restaurant, the informant had witnessed such transactions, and Petitioner stored the drugs in a bookbag he carried everywhere. Id. at 9. Sgt. Leisey explained he trusted the tip because the informant was a "dear friend" of eight years, the informant's spouse was a close friend of fifteen years, he routinely entrusted his child to the informant's care, the informant received nothing in exchange for the tip, and to his knowledge the informant had never committed a crime. Id. at 10-11, 17-22, 27.

Sgt. Leisey forwarded the tip by email to Inv. P.J. Hambrick in the Narcotics Division at RCSO. Id. at 10. Inv. Hambrick advised he had also received a tip from another source that Petitioner was selling heroin and asked if Sgt. Leisey's informant could obtain additional

information.  Id. at 11-12.  The informant responded quickly with (1) a photograph from Facebook of Petitioner's vehicle with a dog inside that Petitioner had observed Petitioner walking; and (2) a description of the specific location on Broad Street where Petitioner routinely parked his vehicle.  Id.  The email exchange concerning the tip was Government's Exhibit 1 at the hearing.  Supp. Tr. 14.  Two days after the tip, RCSO Inv. Jason Kennedy obtained Petitioner's photograph from a police database and drove past the residence to confirm the location and Petitioner's ownership of the vehicle.  Id. at 33-35.  On September 10, Invs. Kennedy and Ortiz observed Petitioner exit the residence with the backpack and accompanied by his wife and child.  Id. at 36.  To avoid a conformation in the presence of the child, Invs. Kennedy and Ortiz decided to return the next day.  Id.

On September 11, Invs. Kennedy and Ortiz encountered Petitioner parking his car on Broad Street.  Petitioner acted nervously when he saw the officers and moved his arms toward the driver's side floorboard.  Id. at 37-38.  Inv. Kennedy observed the backpack on the front passenger's seat in plain view.  Id. at 38-39.  The investigators approached Petitioner and asked for consent to search the vehicle.  Receiving no response, Inv. Kennedy called for a K-9 unit to conduct an open air sniff of the vehicle.  Id. at 40.  While waiting ten to fifteen minutes for the K-9 unit, Petitioner began videotaping the encounter on his cell phone.  Id. at 40, 43.  The video was Government's Exhibit 2.  Supp. Tr. 44.

On cross-examination, Inv. Kennedy conceded his investigative report incorrectly stated he received the tip directly from the informant rather than indirectly through Sgt. Leisey.  Id. at 52-56.  Mr. Holliday also challenged Inv. Kennedy's description of Petitioner reaching for the floorboard and acting nervously by pointing out Inv. Kennedy never pulled

his firearm, Petitioner did not attempt to run, and Petitioner was not pacing, sweating profusely, stuttering, or crying.  Id. at 57-60.

Deputy Patricia Johnson arrived with her canine partner, Umbro, approximately fifteen minutes after Inv. Kennedy's request.  Umbro alerted on the driver's side of the vehicle, and the subsequent search uncovered the drugs and gun forming the basis for the indictment in CR 114-025 and petition for revocation in CR 103-021.  Id. at 40-41.  Deputy Johnson testified concerning the training she and Umbro completed for certification and the behavior of Umbro during the sniff of Petitioner's car that signified detection of a controlled substance.  Id. at 66-71.

During summation, the government conceded Inv. Kennedy conducted an investigatory stop, not a traffic stop, when he approached Petitioner, and the defense acknowledged Umbro's positive alert provided probable cause to search the vehicle.  Id. at 89.  These concessions allowed the Court to focus its inquiry on whether the tip was sufficiently reliable to create reasonable suspicion for the investigatory stop that occurred while Petitioner and the officers waited for the K-9 unit to arrive.  Id. at 90.  The Court denied the suppression motion and found the tip was sufficiently reliable because (1) it came from an "unquestionably honest citizen" who was a dear and trusted friend of Sgt. Leisey and an eyewitness to Petitioner's illegal drug transactions; and (2) "investigators conducted a sufficient investigation and were able to corroborate a multitude of material facts from the tip."  Id. at 11; CR 114-025, doc. no. 44.

**B.    Agreement to Plead Guilty**

While advocating for suppression of the evidence, Mr. Holliday also pursued plea negotiations with the government.  On June 27, 2014, Petitioner signed a plea agreement.

(CR 114-025, doc. no. 49, p. 9), and Judge Bowen conducted change of plea proceedings on July 31, 2014.  Id., doc. nos. 46-48, 79.  Petitioner pleaded guilty to Count One, possession with intent to distribute heroin, but in accordance with Fed. R. Crim P. 11(a)(2), reserved the right to seek appellate review of the denial of his motion to suppress.  Id., doc. no. 49, p. 1 (Plea Agreement).  In exchange, the government agreed to dismiss the two remaining gun charges and not object to a downward variance of two offense levels from the Guidelines range calculated by the Court.  Id. at 4.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea: "That on or about the 11th day of September, 2013, in the Southern District of Georgia, the defendant MICHAEL ANTHONY BROWN did knowing and intentionally possess with intent to distribute heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(c)."  Id. at 2.  Furthermore, "[w]ith the exception of the right to appeal the denial of [Petitioner's] Motion to Suppress, the [Petitioner] entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 5-6.  Absent one of those conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id. at 6.

By signing the Plea Agreement, Petitioner additionally "entirely waive[d] his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion."  Id.  Petitioner attested he "read and carefully reviewed this agreement" with Mr. Holliday and "that his attorney has represented him

faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7, 9.

At the change of plea, Judge Bowen found Petitioner was competent to enter a guilty plea if he so desired. CR 114-025, doc. no. 79, (Rule 11 Tr.), pp. 3-4. Petitioner testified under oath he had sufficient time to discuss his case with Mr. Holliday. Id. at 4-5. When Judge Bowen asked Petitioner, "[A]re you entirely satisfied with Mr. Holliday's preparation and handling of your case?" Petitioner answered, "Yes, Your Honor, I am." Id. at 5. Judge Bowen reviewed the drug charge to which Petitioner was pleading guilty and the maximum prison term of twenty years. Id. at 5-8.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 6-7. The Plea Agreement Petitioner signed also delineates the rights he waived by pleading guilty. Plea Agreement, p. 7. Judge Bowen also reminded Petitioner he was entitled to persist with his not guilty plea entered at arraignment and no one could make Petitioner change that plea. Id. at 6. Further, Judge Bowen confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 10.

In addition, Judge Bowen reviewed the appeal waiver and its limited exceptions, as well as the collateral attack waiver. Id. at 8-9. In particular, Judge Bowen explained,

You have reserved the right to seek an appeal of the denial of your motion to suppress and if you prevail on that appeal you will be permitted to withdraw your guilty plea.  You have agreed to waive any other right to appeal on any ground except in the event that I sentence you somehow above the statutory maximum, if I exceed the advisory [G]uideline range in the sentence, or if the Government appeals.  However, apart from the right to withdraw your guilty plea, you will be giving up forever your right to file a Habeas Corpus proceeding or otherwise attack the fact of conviction. . . .

The only thing that will be left after this plea deal that you've made is the right to challenge the ruling on the motion to suppress.

Id.  Petitioner confirmed his understanding of the Plea Agreement.  Id. at 10.

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent Jason Stricklin with the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  SA Stricklin explained the investigation started because of a tip given to the Richmond County Narcotics Unit about reported heroin sales and possession by Petitioner, and he described the subsequent surveillance of Petitioner's residence.  Id. at 11-12.  SA Stricklin described the events of September 11, 2013, including the positive alert by Umbro, the vehicle search, and the discovery of heroin and the firearm.  Id.

After asking clarifying questions about the amount of drugs recovered, other items located in the vehicle, and the number of firearms recovered in the car, Judge Bowen asked Petitioner if he disagreed with any of the factual basis provided, and Petitioner responded he had not heard anything with which he disagreed.  Id. at 12-18.  Petitioner further confirmed he was guilty of, and wanted to plead to, Count One and had reserved his right to appeal the motion to suppress.  Id. at 18.

At the conclusion of the change of plea, counsel and Petitioner agreed with Judge Bowen's stated intention to defer the petition for revocation of supervised release in CR 103-021 until sentencing.  Id. at 19.  Judge Bowen concluded the hearing as follows, "Mr. Brown,

I hope you understand what a good job [Mr. Holliday] did negotiating that firearms count out of there."  Petitioner responded, "Yes, Your Honor, I'm aware.  Thank you."  Id.

Despite Petitioner's professed satisfaction with Mr. Holliday's handling of the case, Petitioner directed Mr. Holliday to file a motion to withdraw after the change of plea based on disagreements about filing a motion to reconsider the denial of the motion to suppress and whether to object to the Probation Office's calculation of the sentencing range.  CR 114-025, doc. no. 52.  Judge Bowen held an *ex parte* hearing in which Mr. Holliday, Petitioner, and two probation officers discussed Petitioner's objections to the sentence calculation.  Id., doc. no. 55.  After the meeting with the probation officers, Mr. Holliday withdrew the motion to withdraw as counsel.  Id.  Judge Bowen then denied as moot the motion to withdraw, specifically noting his confidence in Mr. Holliday's representation of Petitioner.  Id., doc. no. 57.  Prior to sentencing, Mr. Holliday filed a motion for reconsideration concerning denial of the motion to suppress, which Judge Bowen denied.  Id., doc. nos. 58, 62.

### C. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") setting Petitioner's Total Offense Level at twenty-nine, Criminal History Category at VI, and Guidelines imprisonment range at 151 to 188 months.  PSI ¶¶ 17, 42, 65.  Because Petitioner had two prior felony convictions of either a crime of violence or a controlled substance offense, he was designated a career offender under U.S.S.G. § 4B1.1.  PSI ¶ 24. The statutory maximum term of imprisonment for Count One was twenty years.  21 U.S.C. § 841(b)(1)(C); PSI ¶ 64.  Had Petitioner been found guilty on Count Two, he would have been subject to a five-year, consecutive prison sentence, and had he been found guilty of

Count Three, Petitioner would have qualified as an armed career criminal and thereby subject to a sentence of fifteen years to life in prison.  PSI ¶ 66.

Judge Bowen held Petitioner's sentencing for CR 114-025, as well as the revocation in CR 103-021, on December 8, 2014.  CR 114-025, doc. no. 80 (Sent. Tr.).  Judge Bowen confirmed Petitioner read and discussed the PSI with Mr. Holliday.  Id. at 2.  Petitioner did not object to the factual statements in the PSI, including the information about Petitioner's prior criminal history and career offender designation under the Guidelines, and Judge Bowen adopted the factual statements of the PSI as his own findings of fact.  Id. at 2-3.

Mr. Holliday offered arguments in mitigation, noting Petitioner's ongoing drug addiction issues, his ties to the community through the downtown restaurant he operated with his wife and mother, and his cooperation with police throughout the investigation.  Id. at 3-8. Mr. Holliday also asked Judge Bowen to consider the impact of the revocation sentence when determining a sentence for the indictment.  Id. at 7-8.  Petitioner acknowledged his drug addiction and the problems it had caused him but asked Judge Bowen to consider Petitioner's wife and children, his ability to be a productive member of society when sober, and the psychological impact of losing his father at a young age to a drug deal gone wrong. Id. at 10.

Because of the guilty plea in CR 114-025, Petitioner did not contest the supervised release violation in CR 103-021, other than to clarify the amount of drugs listed in the revocation papers decreased upon issuance of the laboratory reports.  Id. at 13-14.  In imposing sentence, Judge Bowen noted the seriousness of Petitioner's crimes, which involved two controlled substances, concealment of controlled substances, and a trafficking

charge.  Id. at 16.  Judge Bowen also noted Petitioner's pattern of having firearms with him, as well as a lengthy arrest and conviction history.  Id.

On the revocation, Judge Bowen imposed a forty-one month sentence, the top of the advisory Guidelines range.  Id.  On the heroin charge, Judge Bowen noted the troubling circumstances of Petitioner's acknowledged drug addiction and continued presence of firearms in relation to drugs.  Id. at 17.  Judge Bowen imposed a prison sentence of 188-months on the heroin charge and allowed the forty-one month revocation sentence to be served concurrently.  Id. at 18-20.

At the conclusion of sentencing, Judge Bowen appointed attorney Michael Loebl to represent Petitioner on appeal because Mr. Holliday, "who ha[d] done a fine job for [Petitioner]," moved away from the District and no longer had a private legal practice.  Id. at 24.

### D.     Appeal

Consistent with the Plea Agreement, Petitioner appealed the denial of his suppression motion to the Eleventh Circuit Court of Appeals.  Although Petitioner challenged the entirety of the search, the key issue on appeal was "whether the officers had reasonable suspicion to make the initial stop based on the informant's tip and any information corroborated by the officers."  United States v. Brown, 636 F. App'x 514, 517 (11th Cir. 2016) (*per curiam*), *cert. denied*, 137 S. Ct. 229 (U.S. 2016).  In affirming denial of the suppression motion, the Eleventh Circuit evaluated the reliability of the informant and the tip itself, concluding "the tip was sufficiently reliable to give rise to reasonable suspicion."  Id. at 520.  As did the District Court, the Eleventh Circuit relied on the length of time the officer had known the informant, the officer's willingness to entrust the informant with his child, the ability to

obtain follow-up information after the original tip, and the reliability of the tip itself in finding reasonable suspicion. Id. at 518-20.

**E.      § 2255 Proceedings**

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)      Trial counsel provided ineffective assistance in the following ways:

    (a)      misrepresenting the scope of what was included in the reservation in the Plea Agreement of the right to appeal the denial of the motion to suppress;

    (b)      instructing Petitioner to affirmatively answer Judge Bowen's questions during the change of plea proceedings, thereby limiting Petitioner's ability to question the scope of the reservation of rights concerning the motion to suppress;

    (c)

        (i)      failing to advise Petitioner he could plead guilty without a plea agreement, thereby preserving all of his appeal rights, and

        (ii)     misinforming Petitioner he faced designation as an Armed Career Criminal under 18 U.S.C. § 924(e) if convicted on charges that would be dismissed under the Plea Agreement because one of Petitioner's Georgia burglary convictions did not qualify as a predicate offense;

    (d)

        (i)      failing to challenge the credibility of Inv. Kennedy, the lead narcotics investigator, at the suppression hearing by questioning him about a condemnation of property report that had been provided in the State discovery package but not in the Federal discovery package;

        (ii)     failing to argue a Brady violation had occurred by not including the condemnation of property report in the Federal discovery package, a claim that would have resulted in dismissal of the indictment;

        (iii)    failing to obtain a transcript of the State-level preliminary hearing where Inv. Ortiz contradicted the testimony offered by Inv. Kennedy at the suppression

11

hearing, thereby losing the opportunity to impeach Inv. Kennedy;

(iv)     failing to obtain a transcript of the State-level preliminary hearing where Inv. Ortiz testified Petitioner had removed the keys from his ignition before speaking with officers, thereby eliminating the argument for inapplicability of the automobile exception to the warrant requirement;

(v)      conceding officers had probable cause to search once the K-9 alerted on Petitioner's vehicle, even though the suppression hearing testimony did not establish a "positive alert";

(vi)     failing to request an *in camera* interview between the Court and confidential informant who provided the tip at issue in the motion to suppress so that defense counsel could test the informant's reliability;

(vii)    pursuing a non-meritorious argument in supplemental briefing after the suppression hearing rather than focusing on discrepancies and inconsistencies in Inv. Kennedy's testimony;

(viii)   failing to raise twelve enumerated objections to the recommendation for denial of the motion to suppress; and

(ix)     failing to call four witnesses at the suppression hearing who would have provided testimony to contradict that of Inv. Kennedy and to support Petitioner.

(See generally doc. nos. 1, 1-1, 13.)  As relief, Petitioner requests withdrawal of his guilty plea and a new suppression hearing.  (Doc. no. 1-1, p. 26.)

After the original § 2255 motion was briefed, Petitioner filed a motion to add a claim regarding calculation of his advisory Guidelines sentence.  (Doc. no. 14.)  After Respondent explained why the amendment afforded no relief, Petitioner withdrew it and filed a second motion to amend recasting the claim as ineffective assistance of appellate counsel claim for failure to seek resentencing based on a change to the Guidelines definition of a career offender under U.S.S.G. § 4B1.1.  Respondent opposes the second motion to amend.  (Doc. nos. 15, 20.)

## II.   DISCUSSION

### A.    No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 13, p. 1.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required.  Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015) (per curiam).  For this reason, the Court need not rely on Mr. Holliday's affidavit

explanation of his strategy for representing Petitioner.  When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing."  Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008); see also Campbell v. United States, -F. App'x-, No. 15-13261, 2018 WL 4760902, at *4-5 (11th Cir. Oct. 2, 2018) (affirming district court's rejection without hearing of ineffective assistance claim in investigating and litigating motion to suppress).  Because Petitioner's claims lack merit as a matter of law, or are otherwise barred from review in these proceedings, no evidentiary hearing is necessary.

### B.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way."  Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'"  Provenzano v.

14

Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)). The Court

must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (citing Strickland, 466 U.S. at 692-93).

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was

16

reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.  A petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (en banc) (citations omitted).  Therefore, Petitioner must show both counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam).  Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508.  Because no

absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).

### C.    Petitioner Is Not Entitled to Relief on Ground 1(a) and (b)

Petitioner asserts Mr. Holliday provided ineffective assistance by (a) misrepresenting the reservation in the Plea Agreement of the right to appeal denial of the motion to suppress as also preserving Petitioner's right to assert by collateral attack that Mr. Holliday was ineffective in litigating the suppression motion; and (b) instructing Petitioner to affirmatively answer Judge Bowen's questions during the change of plea proceedings, thereby limiting Petitioner's ability to question the scope of the reservation of rights.  Not only are these claims belied by the record, but even if Petitioner could show deficient performance with respect to these claims – he has not – he cannot show prejudice.

The court accepting a guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).  As set forth in detail in Part I(B), *supra*, Judge Bowen accepted the guilty plea only after a thorough explanation of the charge to which Petitioner was pleading guilty, the maximum penalty, the rights Petitioner would be waiving by pleading guilty, and the terms of the Plea Agreement, including the scope of the appeal waiver with its reservation of the right to challenge the motion to suppress and the collateral attack waiver.  Rule 11 Tr. 3-10, 18.

When asked, Petitioner repeatedly affirmed he understood what Judge Bowen had explained to him, including the rights he was waiving, the right to persist with his not guilty plea, and the terms of his Plea Agreement.  Id. at 6, 7, 8, 10.  Petitioner also told Judge Bowen he agreed with the factual basis for the guilty plea presented by SA Stricklin and admitted he possessed heroin on or about September 11, 2013, with the intent to distribute it as charged in Count One of the indictment.  Id. at 18.  Further, Petitioner told Judge Bowen under oath he was "entirely satisfied" with Mr. Holliday's preparation and handling of the case.  Id. at 5; see also Plea Agreement, p. 7 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.").

"[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  Petitioner has never asserted at any time since he did not commit the acts to which he pled guilty, but instead argues the technicalities of how officers discovered his criminal activity.  Petitioner thus entered his guilty plea knowingly and voluntarily and may not now escape the consequences of his sworn declarations to Judge Bowen.

Moreover, to the extent Petitioner argues in Grounds 1(a) and (b) his Plea Agreement should not limit his ineffective assistance arguments, he can show no prejudice because Respondent has waived reliance on the collateral attack waiver as a bar to the ineffective

assistance claims raised in the original § 2255 motion.  (Doc. no. 8, p. 25.)  Thus, Grounds 1(a) and (b) are both devoid of merit, and in any event, moot.

### D.      Petitioner Is Not Entitled to Relief on Ground 1(c)

In Ground 1(c), Petitioner claims Mr. Holliday provided ineffective assistance by (i) failing to advise Petitioner he could plead guilty without a plea agreement, thereby preserving all of his appeal rights, and (ii) misinforming Petitioner he faced designation as an Armed Career Criminal under 18 U.S.C. § 924(e) if convicted on charges that would be dismissed under the Plea Agreement because one of Petitioner's Georgia burglary convictions did not qualify as a predicate offense.

### 1.      Petitioner Could Not Preserve Appeal Rights Without a Plea Agreement

Pursuant to Federal Rule of Criminal Procedure 11(a)(1), a defendant may enter one of three types of pleas—guilty, not guilty, and (with the court's consent) nolo contendere. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Consequently, when a defendant "solemnly admit[s] in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," but may only challenge the knowing and voluntary nature of his plea. Id.  However, with consent of the court and government, "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea." Fed. R. Crim. P. 11(a)(2).

In the first part of Ground 1(c), Petitioner asserts Mr. Holliday failed to advise Petitioner he could plead guilty without a plea agreement and still preserve his appellate rights.  However, as described above, Petitioner is mistaken he could plead guilty without an agreement yet preserve all of his appellate rights.  Mr. Holliday, recognizing Petitioner's desire to preserve his right to challenge the search, negotiated a Rule 11(a)(2) agreement which allowed Petitioner to bring his challenge to the suppression ruling on appeal. Petitioner cannot meet the two-pronged <u>Strickland</u> standard on this point.

### 2.    Petitioner's Conclusory Claim He Was Not Subject to an Armed Career Criminal Sentencing Enhancement Fails

In the second part of Ground 1(c), Petitioner claims, without benefit of any detail, one of his prior burglary convictions did not qualify as a predicate offense under the Armed Career Criminal Act, and therefore Mr. Holliday misinformed him he could have received a sentence of thirty years to life if convicted at trial on all three charges.  Not only does Petitioner fail to provide any details to his argument about not qualifying as an armed career criminal if convicted on all counts, but even if the Court were to assume deficient performance, Petitioner cannot show prejudice.

First, Mr. Holliday negotiated the firearms charges out of the case, and as described above, Petitioner is mistaken he could have plead guilty to all three charges and preserved his appellate rights.  Second, the penalty certification and PSI explained Petitioner faced imprisonment from ten years to life on Count Three alone.  CR 114-025, doc. no. 2; PSI ¶ 66. Coupled with the twenty-year statutory maximum for the drug charge in Count One and the consecutive, minimum five-year prison sentence for Count Two, Petitioner did face a sentence of at least thirty years to life in prison if convicted at trial on all three charges. Third, Petitioner does not explain why his Georgia burglary conviction should not count as a

predicate offense and is mistaken in his assumption burglary can never count as a predicate offense under the ACCA.  See United States v. Gundy, 842 F.3d 1156, 1168-69 (11th Cir. 2016) (concluding Georgia burglary convictions qualify as violent felonies under ACCA's enumerated crimes clause), *cert. denied*, 138 S. Ct. 66 (U.S. 2017).  Thus, Petitioner's conclusory claim in the second part of Ground 1(c) fails.

### E.   Petitioner Is Not Entitled to Relief on Any Portion of Ground 1(d)

In Ground 1(d), Petitioner raises nine separate claims of ineffective assistance against Mr. Holliday based on his strategic choices related to the motion to suppress.  According to Petitioner, Mr. Holliday's improper handling of the motion to suppress rather than his confession of guilt under oath to Judge Bowen resulted in his conviction.

The analysis starts with the recognition, "strategic choices are 'virtually unchallengeable.'"  Provenzano, 148 F.3d at 1332.  Indeed, because of the "heavy measure of deference" owed to strategic decisions, to show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690, 691.  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) (citations omitted).  "[N]o absolute duty exists to investigate particular facts or a certain line of defense."  Puiatti, 732 F.3d at 1279.

As to decisions about witnesses, the Eleventh Circuit has held, "[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."  Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012) (citing Waters, 46 F.3d at 1512); Campbell, 2018 WL 4760902, at *5.

Ineffective assistance of counsel cannot be based on "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified."  Foster, 823 F.2d at 406; see also United States v. Long, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses.").  None of Petitioner's claims overcome this high hurdle.

### 1.    Impeaching Testimony of Inv. Kennedy

In Ground 1(d)(i), Petitioner asserts Mr. Holliday should have impeached Inv. Kennedy's testimony at the suppression hearing with a condemnation of property report provided in the State's discovery package but not in the Federal discovery package.  (See doc. no. 1-2, Ex. A.)  Petitioner states Mr. Holliday should have attacked Inv. Kennedy's credibility based on the statement in the report that he had received information Petitioner sold heroin at his Broad Street restaurant or "by going to meet subjects in his vehicle."  (Id. at 4.)   Petitioner argues this challenge would have discredited his testimony about Petitioner's "movements, nervousness, and viewing of the backpack prior to detention." (Doc. no. 1-1, p. 5.)

This ground forms no basis for relief, as the manner of questioning a witness is a quintessential strategic decision that the Court will not second-guess in hindsight.  See Evans, 699 F.3d at 1268; Foster, 823 F.2d at 406; Long, 674 F.2d at 855.  Petitioner has not shown Mr. Holliday followed a patently unreasonable strategy with Inv. Kennedy such that no competent attorney would have chosen it.  See Adams, 709 F.2d at 1445.  First, Mr. Holliday highlighted another of Inv. Kennedy's reports containing incorrect information about how he received the tip and submitted the report as an exhibit.  Supp. Tr. 52-56.  Mr. Holliday also attacked Inv. Kennedy's description of his interaction with Petitioner by

pointing out he never felt threatened enough to pull his firearm, and Petitioner did not run or pace, sweat profusely, stutter, or cry.  Id. at 57-60.  A partial video of the stop was also admitted such that the Court could observe Petitioner's behavior on the date in question.  Id. at 44.

A second report, written at the same time as the first report, already undermined through live testimony could well be considered redundant.  Moreover, Inv. Kennedy was present and provided live testimony. Discrepancies in live testimony and a written report do not render the testimony facially implausible such that the Court would be prevented from crediting Inv. Kennedy's testimony despite any discrepancies.  See United States v. Smith, 688 F.3d 730, 734 n.10 (11th Cir. 2012).  Perhaps more important, the nature of Petitioner's movements that day and Investigator Kennedy's credibility concerning the events of September 11 were of secondary importance at best.  The Report and Recommendation issued after the hearing addressed reliability of the tip, not Inv. Kennedy.  CR 114-025, doc. no. 40.  The Court made clear at the suppression hearing its focal point was reliability of the tip.  See, e.g., Supp. Tr. 4-6, 80.  The government conceded at the hearing the encounter with Petitioner on September 11, 2013 was an investigatory stop from its inception, further highlighting the focus on reliability of tip to justify the stop.  Supp. Tr. 89.  On appeal, the Eleventh Circuit identified reasonable suspicion for the initial stop based on the tip and corroborating evidence as the key issue.  Brown, 636 F. App'x at 517.  Petitioner insists if only *his* strategy had been adopted and his questions asked of Inv. Kennedy in the manner he preferred, the outcome would have been different, but he has not established Mr. Holliday's strategy concerning how to question Inv. Kennedy was objectively unreasonable.

Petitioner's argument forms no basis for relief. See Puiatti, 732 F.3d at 1279-80; Campbell, 2018 WL 4760902, at *4-5.

### 2.  There Was No **Brady** Violation

In Ground 1(d)(ii), Petitioner claims ineffective assistance because Mr. Holliday did not argue a Brady violation occurred by the government's omission of the property condemnation report in the Federal discovery package.  It is undisputed this same report was provided to Petitioner in the State discovery package.  Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). There are four elements Petitioner must show to establish a Brady violation:

> 1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002) (citing United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989)).  Petitioner has not argued, let alone established, these four elements and, in fact, admits he had the property condemnation report prior to the suppression hearing.  (Doc. no. 1-1, p. 4.)  Mr. Holliday's performance was not deficient, as there was no viable Brady claim to raise regarding the property condemnation report, and Petitioner was not prejudiced by Mr. Holliday failing to raise a meritless claim. See Winfield, 960 F.2d at 974.

### 3.    Transcript of State Preliminary Hearing

In Grounds 1(d)(iii) and (iv), Petitioner argues Mr. Holliday provided ineffective assistance for failing to obtain a transcript of a State preliminary hearing where Petitioner contends Inv. Ortiz testified (1) there was no valid basis for a traffic stop; and (2) Petitioner removed his keys from the ignition of his vehicle at the time Invs. Kennedy and Ortiz approached Petitioner on September 11, 2013.  Petitioner provided an exhibit to his § 2255 motion describing several unsuccessful attempts by he and others on his behalf to obtain the missing transcript.  (Doc. no. 1-4.)  Petitioner believes Inv. Ortiz's testimony in State court could have been used to impeach Inv. Kennedy's testimony concerning the September 11th encounter and to establish the automobile exception to the warrant requirement did not allow for a warrantless search of the vehicle.

Given the transcript has never been produced and thus has never been shown to exist, Mr. Holliday cannot have been deficient in failing to obtain it or use the alleged information contained therein to cross-examine Inv. Kennedy.   Indeed, Mr. Holliday avers he, too, unsuccessfully attempted to obtain the transcript.  Holliday Aff., doc. no. 8-4, ¶ 7.  Assuming for the sake of argument the transcript does exist, Petitioner has not established its relevance to the suppression motion.  As discussed above in detail, the credibility and reliability of the tip, not Inv. Kennedy, formed the crux of the suppression issue.  Moreover, whether Inv. Kennedy's partner observed a traffic violation is immaterial because Inv. Kennedy testified he had no intention of writing a traffic citation when he approached Petitioner, and the government conceded the entire encounter was an investigatory stop.  Supp. Tr. 52-56, 89.

Nor has Petitioner established the relevance of whether he had removed his keys from the ignition when he encountered Inv. Kennedy on September 11th.  The Supreme Court

explained the reasons for the automobile exception to the warrant requirement as twofold: the capacity for a car to be quickly moved before a warrant can be obtained and a significantly reduced expectation of privacy as compared to a home or office. California v. Carney, 471 U.S. 386, 390-91 (1985). Petitioner has not cited, and the Court is not aware of, any requirement a car be running or a key be in the ignition such that a car could immediately be driven away for the automobile exception to apply. Rather, it is the *capacity* to be quickly moved - the difference between stationary structures and vehicles - upon which the exception rests. See id. at 390; see also United States v. Nixon, 918 F.2d 895, 903 (11th Cir. 1990) (recognizing "the ability of a vehicle to become mobile is sufficient to satisfy the exigency requirement [for warrantless search of automobile]"; opinions are clear "'ready mobility' *inherent* in all automobiles" justifies automobile exception to warrant requirement (emphasis in original)).

To the extent Petitioner contends testimony about the location of keys provided another opportunity to impeach Inv. Kennedy's testimony at the suppression hearing, as the Court has repeatedly explained, Mr. Holliday had already attacked the testimony on several fronts. The Court's focus was reliability of the tip. Once the K-9 alerted on the car, officers had probable cause to search the car. Strategic decisions about witnesses will not be second-guessed in hindsight. See Evans, 699 F.3d at 1268; Foster, 823 F.2d at 406; Long, 674 F.2d at 855. Petitioner has not shown deficient performance or prejudice from the alleged failure to obtain the transcript from a State preliminary hearing. See Puiatti, 732 F.3d at 1279-80; Campbell, 2018 WL 4760902, at *4-5.

### 4.   Positive K-9 Alert

In Ground 1(d)(v), Petitioner claims ineffective assistance because Mr. Holliday conceded Umbro's positive alert provided probable cause to search the car.  According to Petitioner, K-9 Deputy Johnson's testimony was insufficient to establish Umbro alerted to the vehicle.  Petitioner argues without any evidentiary support that Umbro could have alerted merely because he smelled the scent of Petitioner's dog inside the vehicle rather than the scent of heroin or marijuana.  (Doc. no. 1-1, pp. 10-11.) Petitioner relies solely on his layman's interpretation of Umbro's behavior during the sniff of the vehicle.

A positive alert by a dog trained in drug detection provides probable cause to conduct a warrantless search of a vehicle.  United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006); see also United States v. Wilbur, 458 F. App'x 829, 830 (11th Cir. 2012) (*per curiam*) ("The drug dog alerted to the presence of drugs in [defendant's] vehicle, which gave the officers probable cause to search the vehicle without a warrant. . . ."); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003) (*per curiam*) (holding positive response by drug dog establishes probable cause for search).   Mr. Holliday's mere acknowledgment of this hornbook principle was not deficient.

### 5.   *In Camera* Interview of Confidential Informant

Petitioner claims in Ground 1(d)(vi) Mr. Holliday provided ineffective assistance by failing to request an *in camera* interview with the confidential informant to test the informant's reliability.  (Doc. no. 1-1, pp. 12-13.)  At the beginning of the suppression hearing, the Court recognized Mr. Holliday's request for information about the informant and explained the judicial inquiry focused on the relationship between the confidential informant and law enforcement and the basis for law enforcement's determination the tip was reliable.

28

Supp. Tr. 4-7; see also CR 114-025, doc. no. 20 (defense motion requesting information about informant and recognizing level of involvement with criminal activity important consideration).  The Court also explained the informant was a mere tipster whose identity fell outside the scope of required disclosure.  Supp. Tr. 4-7.

Longstanding Eleventh Circuit precedent is clear that an *in camera* hearing is not automatically required when a confidential informant's identity is requested.  See United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984) (*per curiam*); see also United States v. Acosta, 807 F. Supp.2d 1154, 1272-73 (N.D. Ga. 2011) (recognizing *in camera* hearing not required and citing in support United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985), and United States v. Vann, 336 F. App'x 944, 950 (1th Cir. 2009).)  Indeed, where the informant was not an active participant in the criminal activity, disclosure is not required.  Roviaro v. United States, 353 U.S. 53, 61-63 (1957); United States v. Gutierrez, 931 F.2d 1482, 1490-91 (11th Cir. 1991).  Rather, the required balancing test from Roviaro focuses on three factors:  "the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure."  Tenorio-Angel, 756 F.2d at 1509 (citations omitted).  A defendant must offer more than "mere conjecture or supposition about the possible relevancy of the informant's testimony."  United States v. McDonald, 935 F.2d 1212, 1217 (11th Cir. 1991).

Here, as recognized at the suppression hearing, the informant was a mere tipster who provided historical eyewitness information and never participated in the criminal activity with which Petitioner was charged.  To the extent Petitioner argues the informant was important to his "defense" of the suppression motion, both this Court and the Eleventh

Circuit on appeal explained the relationship between Sgt. Leisey and the informant showed the tip was reliable enough to create reasonable suspicion, particularly in light of the subsequent corroboration of the tip. Brown, 636 F. App'x at 518-20; CR 114-025, doc. no. 40.

Petitioner's argument is based on the flawed premise Mr. Holliday could have simply requested and been automatically granted permission to interview the confidential informant. Petitioner offers nothing more than conjecture about the informant's reliability, credibility, and reasons for providing the tip to the Sgt. Leisey – none of which satisfy the test for disclosure. See McDonald, 935 F.2d at 1217. Mr. Holliday was not deficient in failing to ask for an interview to which the defense was not entitled. This ground forms no basis for relief.

### 6. Supplemental Briefing, Objections to Report and Recommendation, and Witnesses

In Grounds 1(d)(vii), (viii), and (ix), Petitioner contends Mr. Holliday provided ineffective assistance by focusing on non-meritorious arguments in the post-hearing supplemental briefing and failing to (1) focus on discrepancies and inconsistencies in Inv. Kennedy's testimony; (2) raise twelve specific objections to the Report and Recommendation; and (3) call four witnesses at the hearing who could have contradicted Inv. Kennedy and supported Petitioner's position. (Doc. no. 1-1, pp. 13-24.)

As set forth in detail in Parts E(1) and (3), *supra*, the crux of the analysis for the motion to suppress was the informant's credibility, not Inv. Kennedy's. The Court announced at the end of the hearing what the focus of its analysis would be: "At the end of the day, isn't the entire analysis focused on reliability [of the tip], is that right?" Supp. Tr. 80. The Court then engaged in an extended discussion with counsel for both sides on the

appropriate legal standard for evaluating reliability of the tip. Id. at 80-88.  Despite this clear

instruction from the Court, Petitioner continues to argue Mr. Holliday's focus should have

been impeaching Inv. Kennedy.

In Ground 1(d)(ix), Petitioner argues Mr. Holliday should have called four witnesses,

including Petitioner himself, to contradict Inv. Kennedy's testimony.  (Doc. no. 1-1, pp. 22-

23.)  Petitioner asserts he and his wife, as well as Inv. Ortiz, could have provided testimony

to counter Inv. Kennedy's testimony, which "would have had great affect" on the Court, and

"Kennedy's entire testimony would have been void."  (Id. at 23.)  Such sweeping generalities

based on nothing more than Petitioner's own view of the issues – views repeatedly rejected

by this Court and the Eleventh Circuit – will not suffice to show Mr. Holliday's strategy

"was so patently unreasonable that no competent attorney would have chosen it."  Adams,

709 F.2d at 1445.  Moreover, which witnesses to call and how to question or cross-examine

them, is entitled to significant deference.  Strickland, 466 U.S. at 690, 691; Evans, 699 F.3d

at 1268; Waters, 46 F.3d at 1512; Devier, 3 F.3d at 1450.

Petitioner repeatedly argues in Grounds 1(d)(vii) and (viii) Mr. Holliday was

ineffective for "abandoning" the important fact revealed at the suppression hearing that the

restaurant at which the informant said he or she witnessed drug transactions was closed at the

time the tip was first conveyed to Sgt. Leisey on September 4, 2013.  Supp. Tr. 23, 32, 79.

Six of the twelve points in Ground 1(d)(viii) reference this fact.  (Doc. no. 1-1, pp. 16-22.)

Petitioner believes this fact is fatal to the informant's credibility, and a witness was available

to testify the restaurant closed on August 25, 2013 and Petitioner had not worked there since

mid-July.  (Id. at 23.)  This argument is a red herring, however, because the tipster did not

say *when* he or she witnessed the transactions, just that he or she witnessed them at the restaurant.  Supp. Tr. 23, 26-27, Gov't Ex. 1.

Nor would the lapse of time between the tip and the restaurant closing have required the tip to be discounted out of hand.  Petitioner concedes he worked at the restaurant within less than two months prior to the initial tip on September 4, 2013, and other portions of the tip were corroborated by law enforcement prior to the investigatory stop.  Cf. United States v. Bervaldi, 226 F.3d 1256, 1265-66 (11th Cir. 2000) (concluding staleness doctrine instructive for evaluating reasonable belief and determining information "at least 6 months and 21 days" not stale); see also United States v. Hooshmand, 931 F.2d 725, 735-36 (11th Cir. 1991) (finding eleven-month old report from informant about employer's fraudulent activities not stale and sufficient probable cause for a warrant).  Petitioner's characterization of the restaurant being closed as a fatal blow to the credibility of the tip is simply his self-serving spin.

Although Petitioner strenuously argues Mr. Holliday should have focused on impeaching Inv. Kennedy's testimony, he also faults Mr. Holliday in Ground 1(d)(vii) for not providing responsive arguments to the Court's focus on reliability of the informant.  He continues to insist impeaching Inv. Kennedy's testimony would somehow impeach the credibility of the tip, even though the tip was provided to Sgt. Leisey.  In support of this argument, Petitioner offers a listing of case cites that "would have formed at least some type of argument against the known facts of [Petitioner's] case."  (Doc. no. 1-1, p. 14.)  His sweeping conclusions and laundry list of cases without any showing of applicability, relevance, or legitimate possibility of changing the outcome do not satisfy his high burden to

establish ineffective assistance.  See Puiatti, 732 F.3d at 1279-80 (recognizing counsel has no duty to pursue certain line of defense or pursue every path until "all hope withers").

In his twelve specific points in Ground 1(d)(viii), Petitioner also argues Mr. Holliday should have objected to the tip as merely conveying readily observable facts such as the backpack and where Petitioner parked his car, especially since the informant only shared the latter after investigators asked for additional information.  Mr. Holliday did object that Sgt. Leisey personal relationship with the informant was not sufficient indicia of reliability and that additional "quantifiable facts" were needed.  See CR 114-025, doc. no. 42, p. 2. Moreover, the Court and the Eleventh Circuit specifically considered the tip only conveyed presently observable facts and failed to predict future behavior, yet still found reasonable suspicion for an investigatory stop.  See Brown, 636 F. App'x at 517-20.  Petitioner appears to argue that, if only Mr. Holliday had raised objections in the exact wording and manner preferred by Petitioner, the suppression motion would have been successful.  Such arguments are insufficient to show an attorney's choice of strategy is unreasonable such that no competent counsel would have made such a choice.  See Strickland, 466 U.S. at 690, 691; Puiatti, 732 F.3d at 1279-80.

In his twelve specific points in Ground 1(d)(viii), Petitioner also continues to argue his view there was no positive K-9 alert and the automobile exception to the warrant requirement was not satisfied.  As discussed in detail above, neither of those points have merit, and counsel cannot be ineffective for failing to raise meritless claims.  See Winfield, 960 F.2d at 974.  Petitioner further claims Mr. Holliday should have attacked reliability of the tip because no one ever ran a criminal history report for the informant and the informant may have been "a citizen unfamiliar with drug transactions."  (Doc. no. 1-1, p. 20.)  The

former was addressed at the suppression hearing, and there was no dispute law enforcement had not run such a history.  Supp. Tr. 22, 27

Likewise, there is no basis for finding deficient performance because Mr. Holliday failed to object to every fact or detail brought out at the suppression hearing not making its way into the Report and Recommendation.  Petitioner offers nothing to support his apparent contention the written ruling should contain an entire recital of every piece of evidence and testimony offered, even if the Court determined such information was not germane to resolution of the motion.  By objecting to the recommendation to deny the motion to suppress and arguing the tip did not have sufficient reliability to establish reasonable suspicion, Mr. Holliday registered the defense's dissatisfaction with the Court's analysis. Moreover, as stated in the adoption order, (CR 114-025, doc. no. 44), Judge Bowen conducted a *de novo* review of the record, which contained all the information from the suppression hearing, whether or not specifically referenced in the Report and Recommendation.  Counsel is not ineffective for making strategic choices based on a reasonable selection of the strongest arguments.  <u>See</u> <u>Strickland</u>,  466 U.S. at 690, 691; <u>Puiatti</u>, 732 F.3d at 1279-80.

In sum, all of the issues raised by Petitioner in Grounds 1(d)(vii), (viii), and (ix), including which issues to raise in supplemental briefing, which objections to raise to the Report and Recommendation, and which witnesses to call, fall squarely within the purview of strategic decisions based on the reasonable strategy to focus on reliability of the confidential informant – the crux of the analysis in this Court and at the Eleventh Circuit.  As succinctly summarized by Respondent,

> [Petitioner] has done nothing here to show that pursuing the arguments he
> suggests or adding other witnesses to testify would have impacted the core

issue, or changed the outcome of the motion . . . .  Holliday's strategy to focus
on the central issue identified by the parties and the Court, and not undermine
his stronger arguments by focusing on weaker ones was not "patently
unreasonable."

(Doc. no. 8, pp. 36-37.)

To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690, 691; Puiatti, 732 F.3d at 1279-80; Waters, 46 F.3d at 1512; Devier, 3 F.3d at 1450.  Petitioner's rose-colored universe of reconstructed arguments fails to meet this high burden.

### F.    The Second Motion to Amend Should Be Denied

Nearly one year after filing his original § 2255 motion, Petitioner filed a motion to add an ineffective assistance claim against his appellate counsel, Michael Loebl, for abandoning him and doing nothing to have Petitioner re-sentenced after a change to the Sentencing Guidelines removed burglary from the list of predicate offenses counting toward classification as a career offender under § 4B1.1.  (Doc. no. 17.)  Respondent opposes the motion as untimely and meritless.  (Doc. nos. 15, 20.)

The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in those proceedings:  (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."  Fed. R. Civ. P. 81(a)(4).  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions.  See Mayle v. Felix, 545 U.S. 644, 654

(2005) (citing 28 U.S.C. § 2242); <u>Pruitt v. United States</u>, 274 F.3d 1315, 1317-19 (11th Cir. 2001). Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Under Rule 15(a)(1)(A), a party may amend its pleading once as a matter of course within twenty-one days after service. Petitioner's motion to amend - filed nearly one year after the initial § 2255 motion and after the original motion had been fully briefed – does not fall under the rubric of Rule 15(a)(1)(A). Thus, he can only amend with leave of court: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Respondent does not consent, and thus the Court turns to its determination on whether Petitioner's belated amendment should be allowed.

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Wedemeyer v. Pneudraulics, Inc.</u>, 510 F. App'x 875, 878 (11th Cir. 2013) (*per curiam*). That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1263 (11th Cir. 2008). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." <u>Saewitz v. Lexington Ins. Co.</u>, 133 F. App'x 695, 699 (11th Cir. 2005) (*per curiam*) (quoting <u>Foman</u>, 371 U.S. at 182).

As one court has explained in the context of affirming the denial of a request to amend in a § 2255 case, a petitioner who "has had ample opportunity to present his case to the Court . . . cannot simply raise new claims as they occur to him." <u>United States v. Burbage</u>, 280 F. App'x 777, 782 (10th Cir. 2008); <u>cf.</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 485

(1991) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." (citation omitted)).  Moreover, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).  Because the proposed new claim cannot form the basis for relief, the motion to amend should be denied.

### 1.     Petitioner's New Claim Is Untimely

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1.      the date on which the judgment of conviction becomes final;

2.      the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.      the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.      the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's judgment of conviction entered on December 10, 2014, the Eleventh Circuit affirmed on January 11, 2016, and the Supreme Court denied a petition for writ of certiorari on October 3, 2016, making his conviction final.  Brown, 636 F. App'x 514, *cert.*

*denied*, 137 S. Ct. 229 (U.S. Oct. 3, 2016); CR 114-025, doc. no. 68.  However, Petitioner did not sign his motion to amend until September 18, 2018, nearly two years after his conviction became final.  (Doc. nos. 6, 7.)  Petitioner does not argue any of the other three possible statutory trigger dates apply.

An otherwise untimely request for relief under § 2255 may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred.  Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).  Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances."  Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely request for § 2255 relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in

scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence."  Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted) (*per curiam*).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  McQuiggin, 569 U.S. at 394-95 (emphasis added).

Here, Petitioner has not argued, let alone shown, diligence in pursuing his proposed new claim, extraordinary circumstances prevented him from timely filing his new claim, or that a miscarriage of justice will occur if the Court does not consider it.  Petitioner has not presented any evidence, much less new evidence, to suggest that he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him. Indeed, Petitioner does not claim innocence of his crime of conviction, but rather complains about the way he which he was caught.

As the proposed amendment is untimely, the Court turns to whether the proposed amendment could be considered timely by relation back to the date of filing the original § 2255 motion.

### 2.      The New Claim Does Not Relate Back to the Original § 2255 Motion

Under Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out -- in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(1)(B).  Rule

15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (citing Pruitt, 274 F.3d at 1318). Thus, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." Id. at 1215 (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)). As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. This may be the case even if one or both claims do not explicitly state supporting facts. When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002). In other words, at issue here is whether the proposed amended claim is merely an attempt to expand upon the original claims, or if the amended claim relies upon different facts.

Petitioner's proposed new claim concerning *appellate* counsel is wholly new, relies on completely different facts, and is entirely unrelated to the ineffective assistance of *trial* counsel claims in his original § 2255 motion. As discussed in detail above, the original § 2255 motion argues a multitude of ineffective assistance claims against Mr. Holliday for his handling of the motion to suppress and guilty plea proceedings. In the proposed new claim, Petitioner attempts to raise an ineffective assistance claim against Mr. Loebl because he did not pursue re-sentencing even though the Guidelines definition of a career offender changed while Petitioner's appeal was pending. The facts of any alleged ineffective assistance from appellate counsel Mr. Loebl do not arise out of the same facts forming his

ineffective assistance claims against his trial counsel Mr. Holliday.  The motion to amend is

untimely and should be denied.

### 3.    Even If the Amended Claim Were Timely, It Provides No Basis for Relief

When Petitioner attempted to add a new claim for re-sentencing as a stand-alone

claim, (doc. no. 14), Respondent argued (1) a request for a reduction in sentence based on

changes to the Sentencing Guidelines should actually be pursued in a motion under 18

U.S.C. § 3582; and (2) a substantive change to the Guidelines would have no impact on

Petitioner's sentence.  (Doc. no. 15 (citing United States v. Jerchower, 631 F.3d 1181 (11th

Cir. 2011) and United States v. Strevig, 663 F. App'x 908 (11th Cir. 2016) (*per curiam*)).

Faced with the explanation a stand-alone claim for re-sentencing based on a substantive

change to the Guidelines after his sentencing provided no basis for relief in a § 2255 motion,

Petitioner withdrew that motion and attempts to re-cast his claim as an ineffective assistance

of appellate counsel claim.

Petitioner's ineffective assistance of appellate counsel claim is subject to the same

two-part test enunciated in Strickland and set forth in detail in Part II.B, *supra*.   See

Philmore, 575 F.3d at 1264.    The Court's analysis is further guided by the principle that

appellate counsel is not ineffective for failing to raise a meritless argument on appeal.

United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); Winfield, 960 F.2d at 974.

There is no merit to the substance of Petitioner's request for re-sentencing.  When the

Eleventh Circuit reviews a district court's application of the Sentencing Guidelines, it applies

the version of the Guidelines in place on the date of sentencing.   Jerchower, 631 F.3d at

1184.  However, regardless of the sentencing date, subsequent clarifying amendments to the

Guidelines should be considered on appeal.   Id.  Thus, the pivotal question is whether an

amendment to the Guidelines is *clarifying* and thus retroactive, or *substantive* and thus not retroactive.  Id.  In Strevig, the Eleventh Circuit determined Amendment 798 - the one Petitioner argues should apply - and the resultant change to the definition of "crime of violence" in § 4B1.2 is a substantive change that does not apply retroactively to individuals like Petitioner sentenced prior to the August 1, 2016 effective date.  See 663 F. App'x at 911-14.  Because Amendment 798 is not retroactive, it would have had no impact on Petitioner's appeal.  Counsel cannot be ineffective for failing to raise a meritless claim.  See Nyhuis, 211 F.3d at 1344; Winfield, 960 F.2d at 974.  Thus, even if the claim were not untimely, the motion to amend should be denied because there is no merit to the claim.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to amend be **DENIED**, (doc. no. 17), the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of November, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA